**In re Terry Curtis DAY, Debtor.**

**Bankruptcy No. 87–05373.**

United States Bankruptcy Court, D. North Dakota.

Aug. 11, 1987.

Harold Anderson, Grand Forks, N.D., for debtor.

Richard Nelson, Grand Forks, N.D., trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court on its own Order To Show Cause issued *sua sponte* on June 8, 1987, directing the Debtor to appear and show cause why his Chapter 7 petition should not be dismissed pursuant to the substantial abuse provisions of section 707(b) of the Bankruptcy Code. In lieu of a hearing the Debtor has, at his option, elected to respond by affidavit and brief submitted July 31, 1987. It is on the basis of the original petition as well as the affidavit and brief that the court makes this decision.

### 1.

The Debtor's case was commenced by petition filed April 22, 1987, and came to the court's attention after an examination of his schedules suggested that he has a monthly net income of $811.27 and monthly living expenses totaling $421.00, suggesting that a budget surplus of $390.27 per month exists with which to fund a Chapter 13 plan.

The Debtor, Terry Curtis Day, is a security police officer with the United States Air Force stationed in Grand Forks, North Dakota. His net take home pay per month is $811.27. He has no dependents other than himself. His schedules denote two secured debts totaling $3,725.00 stemming from the purchase of an automobile, a motorcycle, a TV and a VCR. According to his affidavit the motorcycle, TV and VCR have been surrendered to creditors leaving as his only remaining secured debt the balance due on the automobile. With the exclusion of a possible deficiency arising from the surrender of the three enumerated items, the schedules list unsecured debt totaling $4,271.00. His monthly expenses according to the schedule total $967.00 including an indicated payment of $546.00 per month toward bank loans and creditor payments. Except for the obligation remaining on the automobile, the Debtor has no monthly payments in consequence of secured claims.

### 2.

Section 707(b) of the Bankruptcy Code providing for the dismissal of Chapter 7 cases provides as follows:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

The foregoing section was enacted as a part of the consumer credit amendments of the Bankruptcy Amendments and Judge-

ship Act of 1984 as a means of combating what Congress viewed as an abuse of Chapter 7 by consumer debtors who had the ability to pay. *In re White*, 49 B.R. 869 (Bankr.W.D.N.C.1985).

■ The operative language of section 707(b) is "primarily consumer debts" and "substantial abuse". The term consumer debt is defined in section 101(7) as a debt incurred by an individual primarily for a personal, family, or household purpose. Section 707(b), being aimed at abuses in the consumer debtor arena, lends itself to incorporation of this section 101(7) definition of consumer debt, and the court believes the section 101(7) definition ought to be applied in section 707(b) reviews. The term "substantial abuse" is more troublesome. It is not defined within the Bankruptcy Code itself but from developing case law. This court has adopted the following as criteria against which the facts of a particular case should be judged in determining whether substantial abuse exists in a particular case sufficient to warrant dismissal under section 707(b):

1. Whether the debtor has a likelihood of sufficient future income to fund a Chapter 13 plan which would pay a substantial portion of the unsecured claims;

2. Whether the debtor's petition was filed as a consequence of illness, disability, unemployment or some other calamity;

3. Whether the schedules suggest the debtor incurred cash advances and consumer purchases in an excess of his ability to repay them;

4. Whether the debtor's proposed budget is excessive or extravagant;

5. Whether the debtor's statement of income and expenses is misrepresentative of his true financial condition.

*In re Kress*, 57 B.R. 874 (Bankr.N.D.1985). Of these, the most important is the debtor's ability to make payment.

It is in view of the foregoing criteria, with particular emphasis on the ability to repay, that the facts of the instant case are considered.

■ The court first of all concludes that the Debtor's unsecured obligations including the potential deficiency judgments are comprised exclusively of consumer debt as that term has been previously defined.

The Debtor argues that his situation is unique and is deserving of special consideration in that as a member of the military he faces both administrative and judicial punishment from the Air Force which may culminate in his discharge, thereby eliminating his source of income. This court understands the possible military consequences of spendthrift habits by military personnel, but finds them neither unique or unusual. All persons, whether military or civilian, when faced with mounting or unmanageable debt have a variety of consequences facing them. The military consequences facing the Debtor in this case pale in comparison to the grave consequences that are routinely faced by a North Dakota farmer who in the face of debts of a magnitude this Debtor can hardly imagine, is confronted with the loss of his family farm, machinery, livestock, equipment and very likely his mental as well as physical health. The fact that a particular debtor happens to be in military service does not suggest that responsibility is somehow lessened. This court has previously held that the fact of military service does not entitle a debtor to any less consideration under Chapter 7 than a civilian counterpart, but it also does not entitle them to any more. As we remarked in the case of *In re Newsom*, 69 B.R. 801 (Bankr.D.N.D.1987), "Chapter 7 should not be counted on by military personnel as a means of escaping debt where it would not be an appropriate vehicle were they civilians. Persons in the military cannot go on a consumer spending spree and later file for Chapter 7 relief expecting a bankruptcy court to treat them any differently as a consequence of military service than it would anyone else."

It is inappropriate in calculating monthly expenses in either a Chapter 7 or Chapter 13 case to include obligations owing to unsecured creditors because in either instance these debts will either not be paid at all or if paid, will be paid in a substantially

reduced amount. A discharge is available to debtors in Chapter 13 cases after completion of all plan payments whatever the amount of those payments happen to be. 11 U.S.C. § 1328. In the instant case it appears at the present time there exists, after elimination of bank and creditor payments, a budgetary excess of $390.00 per month. Assuming unsecured debt remains at $4,271.36, a contribution of $390.00 per month would pay 100% of all unsecured creditors in just one year! Even a contribution of only $200.00 per month would permit a 100% payback in under two years. Assuming the unsecured debt were escalated by several thousand dollars in consequence of a deficiency thus rendering an unsecured balance of $6,271.00, a $200.00 contribution per month would still provide for a 100% payback in under three years! As can be seen from the foregoing, the Debtor has the present ability to fund a Chapter 13 plan which would repay all of his unsecured debt. The filing of a Chapter 7 petition in the face of an ability to pay 100% of unsecured debt within three years is regarded by this court to constitute substantial abuse. It must be noted, however, that Chapter 13 does not even require this degree of effort. It by no means requires full repayment but whenever, as in this case, a debtor has the ability to make full repayment, he certainly has the ability to make repayment at a lesser level.

There is nothing in the Debtor's affidavit suggesting that he is about to lose his employment. Although he suggests that he will face military retribution if his debts are not discharged through Chapter 7, Chapter 7 as pointed out, is not the only bankruptcy avenue by which military punishment can be averted. A Chapter 13 discharge is just as effective in eliminating remaining debt and the payment of even a portion of unsecured obligations is far more honorable and would quite likely be more satisfactory to the Debtor's superiors than a Chapter 7 washout.

In sum, this court believes the Debtor is suffering from none of the financial infirmities that would make repayment impossible and thus, to allow this case to go forward as a Chapter 7 would be a substantial abuse of the Bankruptcy Code and contrary to the intent of Congress.

Accordingly, and after viewing the Debtor's circumstances as a whole, IT IS ORDERED that the Chapter 7 petition of Terry Curtis Day filed April 2?, 1987, be and is hereby DISMISSED pursuant to section 707(b) of the Bankruptcy Code.

SO ORDERED.