**In re Jamie Lee BUSBIN, Debtor.**

**Bankruptcy No. G87–20514–MHM.**

United States Bankruptcy Court,
N.D. Georgia.

Jan. 5, 1989.

Harry M. Moseley, Cumming, Ga., for debtor.

Robert L. Coley, Atlanta, Ga., U.S. trustee.

Neil C. Gordon, Atlanta, Ga., for Bank South.

## ORDER

MARGARET H. MURPHY,
Bankruptcy Judge.

This matter is before the court on a motion filed November 25, 1987, by the United States Trustee to dismiss this case pursuant to 11 U.S.C. § 707(b). Following notice mailed February 15, 1988, to Debtor, Debtor's attorney, Trustee, Bank South, attorney for Bank South and the United States Trustee, hearing was held February 29, 1988. The court permitted the parties to file letter briefs following the hearing.

1. In that letter brief, Bank South alleged it did not receive notice of the hearing and, thus, was not present at the hearing.

2. Debtor's schedules indicate his intention to file a complaint to recover the amounts Bank South collected pursuant to that garnishment.

On March 9, 1988, attorney for Bank South filed a letter brief in support of the United States Trustee's motion to dismiss.[1] On March 17, 1988, the United States Trustee informed the court by letter that it would join in the brief of Bank South. On March 21, 1988, Debtor's attorney filed a letter brief in opposition to the motion to dismiss. On July 18, 1988, Bank South filed a supplemental letter brief.

## STATEMENT OF FACTS

This case commenced October 1, 1987. Debtor's schedules list Bank South as its sole creditor with a debt in the amount of $1,450. Bank South's claim is based on a deficiency judgment obtained by default against Debtor following repossession and sale of Debtor's 1979 Ford LTD automobile. Debtor shows his monthly net income as $1,150 and his monthly expenses as $970, thus leaving Debtor a disposable income of $130 per month.

Prior to the filing of Debtor's petition, Bank South instituted wage garnishment based on its judgment obtained against Debtor. Pursuant to that garnishment, Bank South collected approximately $896.46.[2] The balance unpaid to Bank South is $526.69.

The United States Trustee filed a motion to dismiss Debtor's case pursuant to 11 U.S.C. § 707(b), alleging that Debtor has a present ability to pay his outstanding debts, and that granting a discharge to Debtor would be a substantial abuse of the provisions of Chapter 7. Debtor opposes dismissal on two grounds: (1) that the United States Trustee's motion was filed and is being prosecuted at the instigation of Bank South who is without standing to file such a motion; and (2) Debtor's petition does not constitute a substantial abuse of the provisions of Chapter 7.

On February 19, 1988, Debtor filed a motion to avoid judicial lien pursuant to 11 U.S.C. § 522(f). That motion was denied without prejudice by this court on October 10, 1988, pending disposition of the instant motion to dismiss.

## CONCLUSIONS OF LAW

Debtor argues the United States Trustee's motion to dismiss should be denied because it was brought and is being prosecuted at the instigation of Bank South. Section 707(b) specifically provides that a motion to dismiss for substantial abuse may *not* be brought at the "request or suggestion of any party in interest". Debtor argues that because the motion to dismiss was brought at the instigation of Bank South and is being prosecuted by Bank South, the motion should fail. If it were held, however, that neither the court nor the United States Trustee could pursue a motion to dismiss pursuant to § 707(b) if the grounds for such a motion were brought to its attention by a party in interest, parties who would otherwise make such information available would be deterred from doing so. Additionally, the court would be prevented from acting in cases where an abuse is most likely to occur. *In re Hudson,* 56 B.R. 415 (Bankr. N.D.Oh.1985). Both the court and the U.S. Trustee have a duty to independently evaluate any information which may be brought to light by a party in interest. Such a screening process will prevent the abuse of § 707(b) by creditors seeking to use it as a means of harassing or intimidating debtors. Therefore, Debtors' first argument is without merit.

Debtor also argues his petition does not constitute a substantial abuse pursuant to 11 U.S.C. § 707(b). Section 707 provides:

(a) The court may dismiss a case under this Chapter only after notice and a hearing and only for cause, including—

(1) Unreasonable delay by the debtor that is prejudicial to creditors;

(2) Nonpayment of any fees and charges required under Chapter 123 of Title 28; and

(3) Failure of the debtor in a voluntary case to file, within 15 days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by ¶ (1) of § 521, but only on motion by the United States Trustee.

(b) After notice a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this Chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this Chapter. There shall be a presumption in favor of granting the relief requested by the debtor.[3]

Section 707(b) was enacted as a part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (hereinafter "1984 Amendments"), in response to criticisms leveled at the Bankruptcy Reform Act of 1978 (hereinafter "Bankruptcy Code") by the consumer credit industry.[4] The legislative history of § 707(b) indicates its enactment was the result of perceived abuses by Chapter 7 and Chapter 13 debtors which resulted from the liberal provisions of the Bankruptcy Code.[5] The provisions of the Bankruptcy Code which were blamed for such abuses were the expansive automatic stay, the overly generous exemption standards, the broadened scope of discharge protection, the Debtor's unfettered choice to elect a no-asset Chapter 7 liquidation, and the lack of any meaningful payment requirement as the condition to confirma-

---

3. The provision in § 707(b) allowing a motion pursuant to that section to be filed by the United States Trustee was added with the amendments to the Bankruptcy Code in 1986 which instituted the United States Trustee program nationwide.

4. *See,* 130 Cong.Rec.H. 1808 *et seq.* (daily ed. March 21, 1984). *See also* the discussion of the legislative history of § 707(b) in the case of *In re Grant,* 51 B.R. 385 (Bankr.N.D.Ohio 1985).

5. The 1984 Amendments also added § 1325(b) which mandates that the debtor utilize all his disposable income to make payments under the plan unless unsecured creditors can be paid in full through a smaller distribution. In addition, the 1984 amendments provided through § 1329(a) that the plan may be modified at the request of an unsecured creditor, presumably modified upward if debtor's economic situation improves.

tion of Chapter 13 plans. Breitowitz, *New Developments in Consumer Bankruptcy: Chapter 7 Dismissal on the Basis of "Substantial Abuse"*, 59 Amer.Bankr.L.J. 327 (1985).[6] As a result of the increase in the number of bankruptcies which followed the enactment of the Bankruptcy Code, the consumer credit industry alleged it suffered significant losses. *Id.* A study conducted by the Credit Research Center affiliated with the Krannert School of Management of Purdue University concluded that a significant percentage of the number of persons filing for relief under Chapter 7 would be able to pay most or all of their debts from their excess disposable income without undue hardship. *Id.* Those debtors were, however, filing Chapter 7 petitions under which creditors received nothing on their claims. The proposals made to Congress, including proposals which would limit access to Chapter 7 based on a debtor's ability to pay his debts under Chapter 13, failed to gain sufficient support for enactment prior to 1984. *Id.* Then, amidst the frenetic legislating in 1984 to amend the Bankruptcy Code to overcome the constitutional defect identified in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress passed the Consumer Credit Amendments, including the enactment of § 707(b). No definition of the term "substantial abuse" is contained in § 707(b) or elsewhere in the Bankruptcy Code. The Senate Report which accompanied the enactment of § 707(b), however, sheds some light on Congressional intent behind the passage of § 707(b):

> This provision represents a balancing of two interests. It preserves the fundamental concept embodied in our bankruptcy laws that debtors who cannot meet debts as they come due should be able to relinquish non-exempt property in exchange for a fresh start. At the same time, however, it upholds creditors' interests in obtaining repayment where such repayment would not be a burden. Crushing debt burdens and severe financial problems place enormous strains on borrowers and their families. Family life, personal emotional health, or work productivity often suffers. By enabling individuals who cannot meet their debts to start a new life, unburdened with debts they cannot pay, the bankruptcy laws allow troubled borrowers to become productive members of their communities. Nothing in this bill denies such borrowers with unaffordable debt burdens bankruptcy relief under Chapter 7. However, if a debtor can meet his debts without difficulty as they become due, use of Chapter 7 would represent a substantial abuse.

S.Rep. No. 98–65 to accompany S. 445, 98 Cong., 1st Sess. (1983) p. 43. Thus, it appears that the primary purpose for the enactment of § 707(b) was to provide for dismissal of the Chapter 7 cases of debtors who can pay their debts from their excess disposable income.

Bank South contends the recent decision of the Ninth Circuit in *Zolg v. Kelly*, 841 F.2d 908 (9th Cir.1988), is the last of a long line of cases which uniformly hold that a debtor's ability to pay his debts defines substantial abuse. In the *Kelly* case, the debtors filed a Chapter 7 bankruptcy petition primarily to discharge a judgment debt of approximately $25,000. Before filing bankruptcy, the Kellys paid off all their unsecured creditors, consolidating some of their debt into their secured line of credit. Mr. Kelly sold his one-third interest in his law firm for the nominal sum of $100. The Kellys listed $181,350 in assets and $147,-000 in debts secured by mortgages against their home. The debtors claimed a $50,000 homestead exemption. The debtors also listed an excess monthly income of $441. Their actual excess monthly income was substantially more because certain of their monthly expenses were found by the bankruptcy court to be excessive. *In re Kelly*, 57 B.R. 536 (Bankr.Ariz.1986).

The Ninth Circuit examined most of the cases which had been decided under

---

**6.** *See also*, Andrea M. Proia, *The Interpretation and Application of Section 707(b) of the Bankruptcy Code*, 93 Comm.L.J. 367 (1988).

§ 707(b) and concluded those cases were unanimous in holding "that the principal factor to be considered in determining substantial abuse is the debtor's ability to pay the debts for which a discharge is sought." *Kelly*, 841 F.2d at 913. The Ninth Circuit, however, went one step further by concluding that "a finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse." *Id.* at 914.

In the instant case, Debtor's excess disposable income would allow him to pay off the entire remaining balance due to Bank South in less than five months. Debtor could pay the entire debt of $1,450 in less than twelve months. Therefore, if this court employed the analysis of the Ninth Circuit in *Kelly*, Debtor's ability to pay would, "standing alone", support a finding of substantial abuse.

The analysis set forth in *Kelly*, however, is not without criticism by other courts and by legal scholars. In the case of *In re Keniston*, 85 B.R. 202 (Bankr.D.New Hamp.1988), the court adopted a narrow construction of § 707(b) espoused in a University of Pennsylvania law review article by Karen Gross, *Preserving a Fresh Start for the Individual Debtor: The Case for Narrow Construction of the Consumer Credit Amendments*, 135 Univ.Penn.L. Rev. 59 (1986). The *Keniston* court concluded:

> "[T]he dismissal power under § 707(b) is not essentially different from the established power of a bankruptcy court to dismiss a petition under any chapter of the Bankruptcy Code that is filed with a lack of good faith or as an abuse of process under §§ 105(a) and 707(a) of the Code.

Both the law review article and the *Keniston* Court engage in an extensive analysis of the Bankruptcy Code to conclude that the focus of § 707(b) should be on whether the debtor is an "honest" debtor as distinguished from a "dishonest" debtor rather than focusing on the single rigid standard of whether a debtor can repay creditors out of future income. *Keniston*, 85 B.R. at 222. An honest debtor is one who has "unfortunately" incurred debts he cannot repay; a dishonest debtor is one who has "systematically defrauded" his creditors. Gross, 135 U.Pa.L.Rev. at 101.

An analysis of the cases cited by both *Keniston* and *Kelly*, however, show that while courts have focused on the debtor's ability to pay as the principal factor in determining substantial abuse, the courts have by no means focused on ability to pay as the sole factor for determining substantial abuse.[7] In the case of *In re Edwards*, 50 B.R. 933 (Bankr.S.D.N.Y.1985), the debtors' monthly net income was $2,550. They listed $184 monthly surplus income, which would have enabled them to pay 100% of their unsecured debt over a three-year period. The court noted the difficulty in determining substantial abuse based on objective data alone. The court also noted that it should accord great weight to the debtors' own assessment of their financial condition. After conducting a hearing in that case, the court concluded a dismissal for substantial abuse would be improper because facts and circumstances not apparent in the debtors' schedules indicated the debtors' petition was not a substantial abuse of the provisions of Chapter 7. Specifically, the debtors had three children and were expecting a fourth. As a result, the wife's income would be lost while expenses due to pregnancy and child care would increase. In addition, prior to filing the bankruptcy petition, the debtors sought assistance from a credit counseling service but were unable to maintain the payments devised by that service. The credit counseling service recommended that the debtors file bankruptcy. Thus, the *Edwards* court concluded the Edwards were "honest" debtors

---

**7.** Even in the *Kelly* case, although the court concluded ability to pay could be the sole factor for determining substantial abuse, the facts of the *Kelly* case show that the debtors, in addition to having the ability to pay, were also abusing the provisions of Chapter 7 by attempting to manipulate the chapter's provisions to discharge a single, unsecured judgment debt. The judgment debt which the *Kelly* debtors sought to discharge consisted primarily of attorney fees which had been awarded against them for abusive litigation.

entitled to seek relief under Chapter 7.[8]

In the case of *In re Kress*, 57 B.R. 874 (Bankr.D.N.Dak.1985), the debtor's yearly income was $90,000 and total unsecured debts were $38,000. The debtor overstated his expenses by $1,000 per month. In dismissing the case, the court relied not solely on the debtor's ability to pay but on the totality of the circumstances, including the debtor's earning potential and his extravagant monthly expense statement.

In the case of *In re Hudson*, 56 B.R. 415 (Bankr.N.D. of Oh.1985), the court listed several factors to be considered in determining substantial abuse. Among these were the aggregate amount of the debtor's income, the ratio between monthly income and monthly expenses, the percentage that could be paid to unsecured creditors, the hardship imposed under Chapter 13, the number of unsecured creditors, the amount of unsecured debt, the nature of the unsecured debt, the motivation for filing under Chapter 7, whether the debtor exhibited good faith in the prosecution of the case, and whether the debtor fully and accurately disclosed his monthly income and expenses. The court allowed the debtors a final opportunity to amend their schedule of current income and current expenditures to accurately reflect their financial status, finding discrepancies and inconsistencies rendered the evidence before the court unreliable for a determination of the § 707(b) issue.

In the case of *In re Bell*, 56 B.R. 637 (Bankr.E.D.Mich.1986), the debtor showed an income in excess of $3,000 per month with $127,000 in general unsecured debt and $5,500 in taxes owed. The court noted that fraud and other means of abuse not involving a debtor's ability to pay was dealt with elsewhere in the Bankruptcy Code, specifically in §§ 523, 727, and 707(a). The court also noted that in determining whether to dismiss a case for substantial abuse, the court should consider the effect of dismissal on the debtors versus the effect of the discharge on the creditors. In *Bell*, the court characterized the debtor's statement of expenses as extravagant. For example, the debtor listed $608 per month in transportation expenses which included the lease of a luxury car, and food expenses for one person of $480 per month which included frequent meals at restaurants. In dismissing the case, the court concluded:

> [I]t is unfair and inequitable for the debtor to request that this Court discharge his debts while he accumulates substantial disposable income over the next several years while living a relatively high life style.

In the case of *In re Struggs*, 71 B.R. 96 (Bankr.E.D.Mich.1987), the court's analysis appeared to focus only on the debtor's ability to pay. The debtor's monthly income was $4,900 with expenses of approximately $3,800 and an excess of approximately $1,100 per month. The court noted debtor had incurred a $16,000 secured debt for a Cadillac automobile and a $16,000 secured debt for a motor home. Although not specifically stated, it was clear the court considered the totality of the circumstances, including the nature of the debtor's secured debts in addition to the debtor's ability to pay his unsecured debt from excess monthly income in determining that the case should be dismissed pursuant to § 707(b).

In the case of *In re Gaskins*, 85 B.R. 846 (Bankr.C.D.Cal.1988), the debtors' income was over $70,000 per year. The debtors' excess annual income was over $6,000 per year. The debtors' unsecured debt was approximately $30,000, most of which was credit card debt. The debtors had recently received an income tax refund of $8,300 which they had used to buy their third new car. The court noted that the use of the tax refund to buy a new car indicated an unwillingness on the part of the debtors to pay their debts. The court also noted that

---

**8.** Of interest is an example given by the *Edwards* court of circumstances, similar to those in the instant case, which that court found would constitute substantial abuse. The example was a Chapter 7 debtor with a single debt of several thousand dollars for a student loan. The debtor's stated income and expenses revealed no reason why the debt could not be paid in full in less than a year. That case was dismissed pursuant to § 707(b). *Edwards*, 50 B.R. at 941.

a three-year Chapter 13 plan would pay 54% of the unsecured debt. The case was dismissed under § 707(b).

In the case of *In re Krohn*, 87 B.R. 926 (N.D.Oh.1988), the district court affirmed the bankruptcy court's dismissal of the case under § 707(b). The court stated the bankruptcy court had properly based its decision to dismiss on the evaluation of the debtor's ability to pay, the debtor's bad faith in filing his petition as exhibited by "eve of bankruptcy purchases", and that the debtor had suffered no unforeseen calamity and was merely using Chapter 7 provisions to gain relief from past excesses.

In the case of *In re Strong*, 84 B.R. 541 (Bankr.N.D.Ind.1988), the court found the presumption contained in § 707(b) in favor of granting relief to the debtor can be overcome by the debtor's substantial disposable income. In the *Strong* case, the debtor had surplus monthly income of over $1,000 and unsecured debt of approximately $11,000. The court noted it was appropriate to consider the factors set forth in *Kress*, and its progeny (discussed *supra*).

In a recent case, *In re Wegner*, 91 B.R. 854 (Bankr.D.Minn.1988), the court concluded that "the fact that the debtors have substantial net disposable income is, in and of itself, insufficient to establish substantial abuse." The court in *Wegner* also refrained from adopting a list of factors to consider in determining substantial abuse. The court held a finding of substantial abuse must be supported by some evidence of the debtor's "misconduct, impropriety, or lack of good faith." An ability to pay the debt from net disposable income is merely evidence of such misconduct, impropriety or lack of good faith.

In *Wegner*, the debtors had amassed over $100,000 in credit card debt. The debtors had a net monthly disposable income of over $1,500. Debtors were ineligible for relief under Chapter 13 or Chapter 11. The court found that, until the stock market crash in October, 1987, the debtors had an honest belief, however naive and unreasonable it may have been, that they would be able to pay their credit card debt. The court also noted little evidence that the debtors used the cash advances from the credit cards to purchase luxury items and that more than one family crisis had contributed to the debtors' financial burden while diverting their attention from their financial affairs. Additionally, the court analyzed the allegations concerning debtors' ability to pay their debts. Because the debtors were ineligible for relief under Chapter 13 or Chapter 11, interest would continue to accrue on their debts. The monthly interest alone on their credit card debt constituted more than their net monthly disposable income. The court concluded that financial irresponsibility alone is insufficient cause to deny relief under Chapter 7.

■ In the instant case, Debtor is attempting to use the provisions of Chapter 7 of the Bankruptcy Code to obtain a discharge of a single debt of $1,450, of which the creditor has received through garnishment $896.46. Debtor shows an excess monthly income of $130. Debtor's schedules also show an anticipated income tax refund of $500. While it does not appear Debtor's statement of his monthly expenses is excessive, it likewise does not appear to be understated. Debtor has offered no evidence of any recent calamity which would affect his ability to pay. Although Debtor has stated the deficiency judgment was taken by default and that he has a good defense to the judgment, e.g., that the sale was not conducted in a manner reasonably calculated to obtain the highest value for the car, Debtor has offered no facts in support of this contention. Thus, it does not appear that Debtor is inflicted with "crushing debt burdens and severe financial problems" or even with debts he cannot pay. It is apparent Debtor filed his Chapter 7 petition for the sole purpose of discharging a single debt which he does not wish to pay. Accordingly, it is hereby

ORDERED that, pursuant to 11 U.S.C. § 707(b), the above-styled case is DISMISSED.

IT IS SO ORDERED.