### In the Matter of Ronald L. TEFERTILLER, Deborah S. Tefertiller, Debtors.

### Bankruptcy No. N89–30151–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Aug. 3, 1989.

Robert L. Coley, Donald F. Walton, Atlanta, Ga., U.S. Trustees.

Theo D. Mann, Sanders, Mottola, Haugen & Mann, Newnan, Ga., for debtors.

Gus L. Wood, Chapter 7 Trustee.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter is before the Court on a Motion to Dismiss filed by the United States Trustee. Having considered briefs in support of and against this motion, this Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Debtors Ronald and Deborah Tefertiller filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 31, 1989. Both Ronald and Deborah are employed as telephone repairmen at AT & T, with net monthly incomes of $1,950.00 and $1,451.67, respectively. Their bankruptcy schedules indicate that they have secured debts totalling $105,067.42, and unsecured debts of $56,691.81. According to the initial schedules, their budgeted monthly expenses add up to $3,454.41, while their net monthly income is $3,401.67.

On April 14, 1989, the United States Trustee filed a Motion to Dismiss pursuant to Section 707(b) of the Bankruptcy Code, claiming that this filing constituted "substantial abuse" of the provisions of Chapter 7. Specifically, he objected to the following listed monthly expenses:

Home Maintenance ........... $100.00
Food ....................... $600.00
Recreation ................. $200.00
Transportation Expenses ..... $200.00
Charitable Contributions ....... $50.00
Miscellaneous Expenses ...... $150.00

The Trustee points to inconsistencies in the listed expenses, and contends that the debtors can revise the expenses to come up with more than $800.00 per month of disposable income which could be applied to a Chapter 13 repayment plan. Moreover, he objects to debtors' paying for the college expenses of their 21 year old daughter.

In response to this motion to dismiss, the debtors prepared an amended statement of current expenditures, revising some of the listed expenses upward. These new figures allegedly reflect increased house payments (imposed after the lender received notice of the bankruptcy filing); higher car insurance costs; and lease payments and automotive expenses for a leased car, which had been inadvertently left out of the prior schedules. This brought the total monthly expenses figure to $3,660.53. In addition, debtors claim that they had scheduled minimum payments on their installment obligations (house and car debts) of $3,517.38 per month prior to filing this petition. Thus, including their other monthly expenses of $2,264.11, the debtors state that they owed $5,781.49 per month at the time of filing on a monthly income of $3,401.67. The U.S. Trustee did not specifically address this claim but renewed his objection to the above listed expenses.

### CONCLUSIONS OF LAW

This Court is asked to determine whether the debtors' filing constitutes "substantial abuse" under § 707(b) of the Bankruptcy Code, which reads as follows:

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b). Any determination of "substantial abuse" necessitates some evaluation of the debtors' expense and income statements, and thus some scrutiny of their personal spending habits, *In re Gyurci*, 95 B.R. 639, 643 n. 3 (Bankr.D.Minn.1989), but this Court's role is not to formulate the debtors' budget. Instead, it is to act if

there is clear evidence of abuse. The last line of § 707(b) grants a presumption in favor of granting relief to the debtor, and this presumption should apply when examining the debtors' schedules. A stricter interpretation would lead to non-uniformity and confusion as judges pass personal judgement about how people should spend their money.

■ In this case, there is a conflict of opinion about what the debtors' expenses should be. The U.S. Trustee takes exception to the $600.00 monthly budget for food, auto expenses of $400.00, entertainment expenses of $200.00, and miscellaneous costs of $200.00, and objects to any expenditures for debtors' 21 year old daughter. Debtors specifically defend the food budget, arguing that it comes to $1.67 per meal for the family of four, and $2.22 per meal if their daughter is excluded. This Court finds no fault with debtors' financial support of their daughter,[1] and does not consider the schedule of expenses to be glaringly inaccurate; nor does it reflect an excessive or extravagant lifestyle.[2]

■ That is not to say that the Trustee may not have a point about areas where debtors could cut back on their expenses. However, even if the schedules could be adjusted to show a monthly surplus, this in itself is not grounds for dismissal under § 707(b). There is a line of cases supporting a strict test for "substantial abuse" which finds abuse whenever a debtor is able to fund a Chapter 13 repayment plan, *see In re Walton,* 866 F.2d 981 (8th Cir. 1989); *In re Kelly,* 841 F.2d 908 (9th Cir. 1988). The Code includes no such language, though, and the legislative history of § 707(b) does not call for such an interpretation.

The provision was enacted as a part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, in an attempt to reform what creditors perceived as abuses caused by liberal provisions enacted in the Bankruptcy Reform Act of 1978 (the current Bankruptcy Code). But the legislative history of § 707(b) is unclear.[3] On one hand, the Senate Report says that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse," S.Rep. No. 65, 98th Cong., 1st Sess. 43 (1983), which the Courts in *Walton* and *Kelly* interpret as a strict "future income" test. On the other hand, Congress specifically declined to include "future income" language in the statute, S.Rep. No. 65 at 3–4. Several courts have interpreted this to mean that such a strict standard should not apply, *see Wegner,* 91 B.R. at 854; *In re Keniston,* 85 B.R. 202, 218–219 (Bankr. D.N.H.1988). In fact, Senators Metzenbaum and Kennedy campaigned against the use of such a strict standard, characterizing it as an "assault" by the "well orchestrated creditor lobby" attempting to "turn back the clock on basic bankruptcy protections," S.Rep. No. 65, at 90.[4]

1. Though they have no legal duty to support their daughter, debtors may find a moral responsibility to do so. Such support is not an intentional act to deprive their creditors or enrich themselves, and does not constitute abuse under Chapter 7. *In re Wegner,* 91 B.R. 854, 859 (Bankr.D.Minn.1988) (debtors' support of adult children and grandchildren was not "substantial abuse").

2. Contrast *In re Gyurci,* 95 B.R. at 639 (debtor with five cars, housekeeper, child in exclusive private school, and several credit cards used to get cash advances and pay children's college expenses, had excessive and extravagant lifestyle); *In re Ploegert,* 93 B.R. 641 (Bankr.N.D. Ind.1988) (debtor owed $20,000 in consumer debts, budgeted $840 per month for recreation and $86 per month for hygiene, and moved into luxury apartment).

3. There were no committee reports on the final version of this Act, so a report on an earlier draft (S.445) is "the best available evidence of Congress's [sic] intent in enacting section 707(b)," *Walton,* 866 F.2d at 983, quoting *Kelly,* 841 F.2d at 914 n. 7; *see also In re Keniston,* 85 B.R. 202, 214, 217–218 (Bankr.D.N.H.1988).

4. The *Walton* Court contended that Senator Metzenbaum's remarks were not official comments from the Judiciary Committee, and for that reason should not be considered as a part of the legislative history of § 707(b), *Walton,* 866 F.2d at 986. However, these were not "stray remarks," *Id.;* they were considered important enough to be added to the end of the Committee's official comments. *See also Walton,* 866 F.2d at 986 (McMillian, J., dissenting).

This is the language used by the Senate Report:

This provision represents a balancing of two interests. It preserves the fundamental concept embodied in our bankruptcy laws that debtors who cannot meet debts as they come due should be able to relinquish non-exempt property in exchange for a fresh start. At the same time, however, it upholds creditors' interests in obtaining repayment where such repayment would not be a burden. Crushing debt burdens and severe financial problems place enormous strains on borrowers and their families. Family life, personal emotional health, or work productivity often suffers. By enabling individuals who cannot meet their debts to start a new life, unburdened with debts they cannot pay, the bankruptcy laws allow troubled borrowers to become productive members of their communities. Nothing in this bill denies such borrowers with unaffordable debt burdens bankruptcy relief under Chapter 7. However, if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse.

S.Rep. No. 65 at 43. Section 707(b) is intended to give relief to debtors with crushing debt burdens, according to this language, and those burdens can be measured by the debtors' ability to pay debts as they come due. Debtors who face such burdens may be able to fund a Chapter 13 repayment on paper, but this language indicates that Chapter 7 relief should not be denied to them. In the case at bar, the debtors contend that they are faced with monthly expenses and payments of $5,781.49, while taking in a monthly income of $3,401.67. This Court finds that the debtors face the same kind of burdensome debt described in the Senate Report.

Congress was concerned about balancing the need to repay creditors with the goal of providing a fresh start for needy debtors, which lies at the heart of Chapter 7. The concern for making a fresh start available is reflected by the presumption in 707(b) in favor of granting relief to the debtor, discussed above. This statutory language is inconsistent with a strict "future income" standard for determining substantial abuse.

Instead, many courts have adopted a "totality of circumstances" test. Under this test, the debtor's ability to fund a Chapter 13 plan is a factor to be considered in determining whether or not there is substantial abuse, but other factors must also be considered. For example, courts look at whether the petition was filed due to a calamity, such as illness, disability or unemployment; whether the schedules indicate cash advancements were incurred in excess of the debtor's ability to repay them; whether the debtor's budget is extravagant or excessive; and whether the statement of income represents the debtor's true financial condition. *In re Busbin,* 95 B.R. 240, 244–246 (Bankr.N.D.Ga.1989); *Gyurci,* 95 B.R. at 642; *Herbst,* 95 B.R. at 101; *Ploegert,* 93 B.R. at 642; *In re Penna,* 86 B.R. 171, 173 (Bankr.E.D.Mo.1988). This test necessarily demands a case-by-case determination of whether substantial abuse exists.

In order to put the present case in perspective, contrast it with *In re Ploegert,* 93 B.R. at 641. In that case, the debtor earned $13 per hour at General Motors, yet accumulated over $20 thousand in unsecured consumer debts. When his first schedules showed a $215 per month surplus, he amended them to show a reduced income and doubled expenses. The schedules listed $840 per month for recreation expenses, which included weekend trips and camping trips, and other expenses that the Court found to be wildly extravagant and excessive. *Id.* at 642–644.

Compare also the facts in *In re Gyurci,* 95 B.R. at 639. In that case, the debtor was an attorney and his wife drew a $16 thousand salary. He owned seventeen credit cards and used them to get cash advances; owned five automobiles; sent two children through college with his credit cards; and placed his third child in an exclusive private school. The Court found that the debtor's lifestyle was excessive, that he misused his credit cards, and that

he was able to pay back a significant portion of his debt. *Id.* at 643–644.

In *In re Busbin,* 95 B.R. 240 (Bankr.N.D. Ga.1989), the debtor's disposable monthly income was $130 per month, but only owed $526.69 to one creditor. Judge Murphy determined that he was not inflicted with "crushing debt burdens and severe financial problems," and that he filed a Chapter 7 petition just to discharge a single debt, *Id.* at 246. In that case there was no dishonest or wildly extravagant behavior, but the Chapter 7 filing was abusive nonetheless.[5]

On the other hand, in the case at bar, the debtors are faced with a debt crisis. As discussed above, debtors' current monthly expenses exceed their monthly income by over $2,000. Moreover, it does not appear that debtors accumulated their debts without intending to repay them. Their lifestyle cannot be characterized as "excessive" or "extravagant." Finally, though the U.S. Trustee has some reservations about their budgeted expenses, there is no indication that the debtors' statements and schedules do not represent their true financial condition.

Accordingly, the U.S. Trustee's motion to dismiss for "substantial abuse" pursuant to § 707(b) is hereby DENIED.

IT IS SO ORDERED.

---

**5.** Judge Murphy's opinion provides an excellent survey of § 707(b) cases, giving a good indication of the types of circumstances to be considered in determining whether or not "substantial abuse" exists.