**In re Jonathan HUDSON and Joyce Ann Hudson, Debtors.**

**Bankruptcy No. 85–00236.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Dec. 10, 1985.

L. Douglass McCrury, Toledo, Ohio, for debtors.

John J. Hunter, Toledo, Ohio, trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court for Determination of Dismissal pursuant to 11 U.S.C. Section 707(b). The Court has conducted a hearing on this matter, and has heard both the evidence and arguments of counsel. Subsequent to this hearing, the Debtors were Ordered to file an Amended Schedule of Current Income and Current Expenditures. The Court has reviewed that Amended Schedule, the arguments of counsel, and the entire record in this case. Based upon that review and for the following reasons the Court finds that this matter should be continued for further proceedings.

## FACTS

The Court makes the following findings of fact:

I. The Debtors filed their voluntary Chapter 7 Petition with this Court on February 12, 1985. In the schedules which accompanied that Petition and the amendments which followed, they listed:

A. Secured obligations of Four Thousand Five Hundred Fifty and 24/100 Dollars ($4,550.24). These obligations are secured by two automobiles, a 1977 Plymouth and a 1979 Plymouth. They also list an obligation of Three Hundred Ninety-one and 57/100 Dollars ($391.57) in a share account. The nature of this obligation and/or account is unclear.

B. Unsecured obligations totaling Nine Thousand Nine Hundred Seven and 62/100 Dollars ($9,907.62). The majority of these obligations are the result of consumer purchases, none of which exceed Five Hundred Seventy-six and 45/100 Dollars ($576.45) in amount. The Debtors also have a deficiency debt of Six Hundred Eighty-nine and 33/100 Dollars ($689.33) which is owed subsequent to the repossession of another automobile. In addition, the Debtors have a Two Thousand Three Hundred Eighty and 13/100 Dollars ($2,380.13) obligation to a utility company for service rendered prior to the filing of the Petition.

C. Priority debts of Four Hundred Twenty and 29/100 Dollars ($420.29). This obligation is owed to the United States on their 1983 income tax obligations.

II. The Debtors do not claim any ownership in real estate. Their present residence is rented.

III. The Debtor-husband is employed as an assembler by the General Motors Corp. In the two years prior to the filing of the Petition, he had an income of approximately Thirty-one Thousand and no/100 Dollars ($31,000.00) in each of these years. At the time of this hearing he was on disability leave and was receiving disability pay in the amount of Nine Hundred Fifty-one and no/100 Dollars ($951.00) per month. His normal take home pay is One Thousand Six Hundred Thirty-eight and no/100 Dollars ($1,638.00). At the present time it is unknown whether or not he has returned to work.

IV. The Debtor-wife is employed as a teachers aid by the Toledo Board of Education. In that capacity she only works nine months out of the year. In 1983 she had an income of approximately Six Thousand and no/100 Dollars ($6,000.00). In 1984 she had an income of approximately Five Thousand and no/100 Dollars ($5,000.00). During the present year it appears that her monthly income, if averaged over a twelve month period, would be approximately Four Hundred Twenty-eight and 40/100 Dollars ($428.40).

V. The Debtors have three dependent children. They have two sons, ages seventeen and fourteen. Their daughter is ten years of age.

VI. The Debtors have twice amended their Schedule of Current Income and Current Expenditures. In the most recent amendment they list the following items: (all entries are per month figures)

EXPENDITURES

| | |
|---|---|
| Rent | $ 325.00 |
| Electricity | 60.00 |
| Water | 35.00 |

EXPENDITURES

| | |
|---|---|
| Heat | $ 200.00 |
| Telephone | 30.00 |
| Garbage | 15.00 |
| Food | 500.00 |
| Clothing | 100.00 |
| Newspapers (and other publications) | 10.00 |
| Medical | 135.00 |
| Transportation | 146.00 |
| Insurance | 75.00 |
| Haircuts | 40.00 |
| Tobacco | 50.00 |
| Churches | 25.00 |
| Tuition | 69.00 |
| Reaffirmation of secured debts on vehicles | 189.00 |
| TOTAL | $2,004.00 |

INCOME

| | |
|---|---|
| Debtor-Husband | $1,638.00 |
| Debtor-Wife | 571.20 |
| Business operations | –0– |
| TOTAL: | $2,209.00 |
| Adjustment (See Note A Below | 142.80 |
| ADJUSTED TOTAL: | $2,066.40 |

A. It should be noted that the total income figure incorporates the wife's income during the months she is employed. When averaged over twelve months her average monthly income would be approximately Four Hundred Twenty-eight and 40/100 Dollars ($428.40) per month. Accordingly, the Court will consider the Debtors's monthly income to be that shown as the adjusted income.

B. It should also be noted that the Court's listing of the Debtor's expenses conflicts with that which is listed on the actual schedule filed by the Debtors. The conflict results from a reduction in the amount of monthly expenditures listed on the actual schedules by One Hundred Thirty-two and no/100 Dollars ($132.00). This reduction was made due to the fact that since the filing of the Amended Schedule the Debtors appear to have discontinued their cable television service (at $80.00 per month), and have chosen not to enter into a reaffirmation agree-

ment with another creditor (at $52.00 per month).

C.   In addition to the Amended Schedule, the Debtors filed an explanation of the figures which appear on the schedule. Many of the figures in the explanation conflict with the figures listed in the schedules. Specifically:

1.   The utilities expense does not include amounts which will be adequate to pay the arrearages which have accrued since the filing of the Petition. The arrearage appears to be $873.00.

2.   The food receipts for the month of June 1985 totalled $608.77 (as contrasted with the $500.00 per month figure listed on the schedule).

3.   The medical expenditure includes payments for the wife's continuing dermatological condition, as well as other expenses not covered by the Debtors' medical insurance (there are no specific expenses listed).

4.   The transportation expenses are explained as being primarily for fuel and oil. Reference is made to expenditures for anticipated repairs and replacement of their current vehicles. It is unclear whether or not such items have been included in the amount listed on the schedule. It is also unclear whether the transportation expense includes an allowance for payment of a repair bill which has arisen subsequent to the filing of the petition. That bill is in the amount of $400.00.

5.   The haircut expense, as it appears in the explanation, is listed at $90.00 per month (as contrasted to the $40.00 per month listed on the schedule). This $90.00 per month expense allows for a $15.00 haircut for each of the two female members of the family every two weeks ($60.00 per month), and a $5.00 haircut for each of the three male members of the family every two weeks ($30.00 per month).

6.   The tobacco expense is explained as being $100.00 per month (as compared to the $50.00 per month listed on the schedule). As explained, this $100.00 per month expenditure allows for the husband's two pack per day habit plus a pipe, and for the wife's one and one-half pack per day habit.

7.   The tuition expense is to allow the daughter to attend a privately owned school for children with mild disabilities.

8.   There is included in the explanation a $67.00 per month expense for the rental of a kitchen stove. This expense does not appear on the schedule.

D.   It should be further noted that if the figures on the explanation are correct, then the Debtors' total monthly expenses would be $2,289.07 plus payments to make up the utility arrearages and the automobile repair bill.

VII.   On his statement of Financial Affairs the Debtor-husband indicated that he had filed a Chapter 7 Petition with this Court in 1968 and that he received a discharge in that case. However, a review of the Court's records reflects that that Petition was actually filed in 1967. The review also reflects that the Debtor filed a Chapter 13 Petition with this Court on January 25, 1971. That case was subsequently dismissed on June 7, 1973. A further review of the record finds that on June 5, 1973, two days prior to the dismissal of his 1971 case, the Debtor filed a Chapter 7 Petition with this Court. A discharge was granted in that case on September 19, 1973. The 1971 and 1973 Petitions were not disclosed on the Statement of Financial Affairs which is filed in the case presently before the Court.

### LAW

The provisions of 11 U.S.C. Section 707(b) state:

(b) After notice and a hearing, the court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter ... whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of

this chapter ... There shall be a presumption in favor of granting the relief requested by the debtor.

Under this provision the Court may, on its own initiative, dismiss a consumer debtor's case if it finds that the granting of relief under Chapter 7 of Title 11 would be a substantial abuse of the provisions of Chapter 7. This provision also indicates that this section may only be exercised by the Court, and may not be employed by any other party-in-interest. There have been no other cases in this Court which have addressed this provision of Title 11.

## I

The first question which must be resolved is the determination as to meaning of the term "substantial abuse". A review of existing case authority and the legislative histories found therein, *see, In re Grant*, 51 B.R. 385 (Bkcy.N.D.Ohio 1985), finds that Congress did not set forth a standard by which the term "substantial abuse" was to be measured. In *In re Bryant*, 47 B.R. 21 (Bkcy.W.D.N.C.1984), the Court adopted an approach whereby the term "substantial abuse" would be given its ordinary and plain meaning. In so doing, the Court set forth certain factors which surround the filing of a petition which it believed were pertinent in determining whether or not the granting of relief would be a substantial abuse. These factors included the circumstances which lead to the debtor's financial difficulties, the execution of the debtor's duty to fully and accurately disclose their financial position, and any exhibition of bad faith in the representation of their financial future. In *In re White*, 49 B.R. 869 (Bkcy.W.D.N.C. 1985), the Court adopted both an ordinary and plain meaning approach as well as a totality of the circumstances approach. In *In re Grant*, supra, the Court considered the factors set forth in both *Bryant* and *White*. However, it further concluded that "substantial abuse" also contemplated circumstances in which the debtor's income, when compared to his expenses, was sufficient to repay unsecured creditors a significant portion of what they were owed if

done under the auspices of a Chapter 13 plan. *See also, In re Edwards*, 50 B.R. 933 (Bkcy.S.D.N.Y.1985) at 937.

It is well established that the provisions of Chapter 7 were intended to afford relief to a debtor when he finds himself in financial circumstances which threaten his immediate well-being. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). If a debtor has the ability to repay all or a substantial portion of his debts within a reasonable time, while at the same time maintaining a reasonable standard of living, then he cannot be so financially destitute that his immediate welfare is in question. In the absence of such jeopardy, it is morally and legally unconscionable that a person should be able to extinguish his obligations without first making a reasonable effort to fulfill them. Since the availability of Chapter 7 presupposes that a debtor has made a reasonable effort to pay his debts, it would be a substantial abuse of that Chapter to allow a debtor to discharge those debts without first making a legitimate effort at repayment. Therefore, it must be concluded that a substantial abuse, for purposes of 11 U.S.C. Section 707(b), occurs when a debtor, who has filed under Chapter 7, has the ability to repay all or a substantial portion of his debts under the auspices of Title 11 Chapter 13.

## II

Having defined the term "substantial abuse", the Court must move to the consideration of the factors which should be reviewed when determining whether or not a Chapter 7 debtor has the ability to repay all or a substantial portion of his debts. Other Courts have identified certain factors which they have found relevant to that determination. *See, In re Grant*, supra. These factors include 1) the aggregate amount of the debtor's income, 2) the ratio between monthly income and monthly expenses, 3) the percentage that could be paid to unsecured creditors, 4) the hardship that would be imposed while under a Chapter 13 plan, 5) the amount of unsecured

creditors, 6) the amount of unsecured debt, and 7) the nature of the unsecured debt. These factors are the threshold considerations which must be made when determining whether or not a Chapter 13 plan will be confirmed. Since the debtor's ability to support a Chapter 13 Plan is to be the measure of substantial abuse, it would be appropriate to apply those same confirmation standards when reviewing a case for determination under Section 707(b).

■ It should be pointed out that the Court is not limited to consideration of only those factors enumerated above. While each case must be reviewed on its own merits, the Court could also examine the question of substantial abuse with regards to the debtor's motivation for filing under Chapter 7, whether the debtor has exhibited good faith in the prosecution of his case, and whether the debtor has fully and accurately disclosed his monthly income and expenses. *See In re Bryant,* supra. However, the primary focus should be on the question of whether or not the debtor may propose a confirmable Chapter 13 Plan.

### III

The second question which must be resolved is the question as to how the Court is to implement this novel section. Although existing case authority provides no positive guidance on this issue, it appears that most Courts have followed a strict interpretation of the provisions of Section 707(b). In these cases, the Courts have held that creditors, *Matter of Christian,* 51 B.R. 118 (Bkcy.N.J.1985), and the trustee, *In re Emmons,* Case No. 85–00323, (Bkcy. N.D.Ohio 1985) are parties-in-interest, and that as such they are ineligible to approach the Court with a suggestion that a determination under Section 707(b) be made. As previously indicated, the Bankruptcy Code and the legislative history provide no guidance as to the practical application of this section.

While it appears that the provisions of Section 707(b) should be given their ordinary and plain meaning, to do so is to present the Court with a practical difficulty in the event a party-in-interest should bring a case to the Court's attention. On one hand, the Court may not act pursuant to Section 707(b) if a case has been brought to its attention by a party-in-interest. On the other hand, the Court cannot ignore information which has been brought before it, regardless of how the information was obtained. If a rule were devised, whereby a Court could not act pursuant to Section 707(b) if a case was called to the Court's attention by a party-in-interest, such a rule would have a deterrent effect on the parties who would otherwise make this information available. However, it would also have the effect of preventing the Court from acting in cases where an abuse of Title 11 Chapter 7 is most likely to be occurring.

■ This Court cannot sanction flagrant violations of the restrictions which limit parties-in-interest from suggesting the review of a case for dismissal under Section 707(b). However, this Court also cannot sanction abuse of Chapter 7, particularly when Congress has authorized the Courts to challenge cases in which abuse is suspected. If given the choice as to which of these violations should be overlooked, this Court believes that public policy and equity require that it be the former. This is not to say that repeated violations by any particular party-in-interest will go unattended. Rather, the Court should retain the option of pursuing a case under Section 707(b) dependent upon the intent and past practices of the party which calls attention to a case. Therefore, this Court must conclude that unless a party or their counsel flagrantly, intentionally, or repeatedly violate the limitations under 11 U.S.C. Section 707(b), the Court will not necessarily be precluded from dismissing a case pursuant to 11 U.S.C. Section 707(b), despite the fact that a party-in-interest brought to light information which subjects a case to scrutiny under that section.

### IV

While there remains a question as to whether, in completing the Statement of

Financial Affairs, the Debtor-husband's failure to disclose his 1971 and 1973 bankruptcy petitions demonstrates his good faith in the filing of the present petition, the Court must now consider whether the granting of relief in the present case will result in a substantial abuse of Chapter 7 of Title 11. A review of the facts finds that there are material discrepancies between the three statements of monthly income and expenses which have been filed thus far in the case. One such schedule asserts that the Debtors' monthly expenses exceed their monthly income by as much as Two Hundred Forty-seven and 72/100 Dollars ($247.72). Although the Debtors have amended this schedule, the entries on the amended schedule do not agree with those in the accompanying explanation. In fact, some of the figures in the explanation do not appear anywhere else on the petition.

The abundance of these discrepancies and inconsistencies demonstrates that there is insufficient reliable evidence before this Court for the determination which must be made. Therefore, the Debtors will be afforded an opportunity to provide the Court with one *final* amendment to their Schedule of Current Income and Current Expenditures and any explanation they wish to attach. This final amendment will constitute the schedule upon which they will rely for purposes of the Court's determination. The Court will review the information on this schedule and, if satisfied as to its content, will issue its ruling on the Section 707(b) question. If further information is required, the Court will convene a hearing for the purpose of receiving additional evidence.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Debtors file, within twenty-one (21) days from the date of this Order, an Amended Schedule of Current Income and Current Expenditures.

It is FURTHER ORDERED that failure to timely file the required amendment will result in a dismissal of this case without further notice or hearing.