**In the Matter of Francis Alan PLOEGERT, Debtor.**

**Bankruptcy No. 88–10822.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Nov. 22, 1988.

Donald Aikman, Fort Wayne, Ind., for movant.

James Louis Larson, Fort Wayne, Ind., for the debtor.

MEMORANDUM OF DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on a motion to dismiss filed pursuant to 11 U.S. C. § 707(b) by the Trustee. The motion came before the court for a hearing on September 27, 1988, at which the court heard evidence concerning the motion and the arguments of counsel.

Section 707(b) provides:

[T]he court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. 11 U.S.C. § 707(b)

Every creditor feels that a bankruptcy discharge constitutes a substantial abuse. For this reason, creditors are not permitted to raise the issue, in cases involving consumer debtors. Although the language of the section would seem to indicate the question may only be raised by the court or the U.S. Trustee, the most recent legislative history demonstrates this is not the case. Congress sought only "to preclude creditors from exercising this func-

tion." 132 Cong.Rec. H8998 (daily ed. October 2, 1986), *reprinted in* 9 Bkr–L Ed § 81:13, at 142 (1988). It

> never intended to prevent a panel trustee ... from bringing evidence or information pertaining to "substantial abuse" to the attention of the court ... The "party in interest" phrase in Section 707(b) was intended to mean creditors—not panel trustees ... 132 Cong.Rec. H9000 (daily ed. October 2, 1986) (statement of Rep. Fish), *reprinted in* 9 Bkr–L Ed § 81:13, at 144 (1988).

Indeed, Congress was fully aware of the fact that the case trustee is uniquely situated and is the most likely person to be able to identify those situations where a question of substantial abuse might be present. *Id.* Accordingly, it is the court's conclusion that the motion is properly before it.

Section 707(b) helps to implement one of Congress' major premises of the Bankruptcy Code—"that the use of the bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under Chapter 13 ..." H.Rep. No. 595, 95th Cong., 1st Sess. 118, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6078, *reprinted in* 9 Bkr–L Ed § 82:4, at 95 (1979). Its enactment

> was a legislative reaction to the widespread perception that the option of resorting to chapter 7 relief was becoming too commonplace by debtors who had no demonstrable need for relief or inability to meet all or a significant portion of their financial obligations. *Matter of Strange,* 85 B.R. 662, 664 (Bankr.S.D.Ga. 1988).

Its purpose is to preserve the integrity of the bankruptcy process, by giving the court the ability to dismiss a case where it appears that a debtor is merely unwilling, rather than unable, to meet its obligations. *See In re Gaskins,* 85 B.R. 846, 848 (Bankr. C.D.Cal.1988); *Matter of Cord,* 68 B.R. 5, 7 (Bankr.W.D.Mo.1986). Because of this,

> the debtor's ability to pay his debts when due, as determined by his ability to fund a Chapter 13 plan, is the primary factor to be considered in determining whether

granting relief would be a substantial abuse. *In re Kelly,* 841 F.2d 908, 914 (9th Cir.1988). *See also Matter of Strong,* 84 B.R. 541, 545 (Bankr.N.D.Ind. 1988).

This ability, by itself, will support a conclusion of substantial abuse. *In re Kelly, supra,* 841 F.2d at 914.

■ Although, the ability to repay one's obligations is a major consideration in a section 707(b) inquiry, it is not the only one. *Matter of Strong, supra,* 84 B.R. at 545; *In re Grant,* 51 B.R. 385 (Bankr.N.D.Ohio 1985). Where necessary, the court may consider such things as:

a. the circumstances which motivated the petition, in terms of whether "the debtor has suffered an unforseen calamity, or is merely using chapter 7 provisions to gain relief from past excesses." *In re Krohn,* 78 B.R. 829, 832 (Bankr.N.D.Ohio 1987), *aff'd, In re Krohn,* 87 B.R. 926 (Bankr.N.D.Ohio, 1988); *In re Grant, supra,* 51 B.R. at 393–394.

b. whether the debtor has fully and accurately disclosed his monthly income and whether the proposed budged is excessive or extravagant. *In re Hudson,* 56 B.R. 415, 420 (Bankr.N.D.Ohio 1985); *In re Gaukler,* 63 B.R. 224, 225 (Bankr.D.N.D.1986).

c. whether or not the information the debtor has supplied, in connection with the bankruptcy schedules and statements, accurately reflects the debtor's true financial condition, and, if not, whether this amounts to an attempt to mislead the court. *In re Bryant,* 47 B.R. 21, 25 (Bankr.W.D.N.C.1984).

This list is not exhaustive. Ultimately, the question of whether or not a substantial abuse exists can only be determined on a case-by-case basis after "consider[ing] the totality of the circumstances, bearing in mind that the basic purpose of Chapter 7 is to provide the honest debtor with a fresh start." *In re Kress,* 57 B.R. 874, 878 (Bankr.D.N.D.1985).

Debtor is a young man who is single with no dependents. His bankruptcy schedules indicate only minimal assets and approxi-

mately $20,000.00 in debt, all of it unsecured. These debts are primarily consumer debts.

For the past seven and one-half years the debtor has been employed by General Motors. He is currently a "parts chaser," earning an hourly wage of slightly more than thirteen dollars. Debtor works full time. Historically, in addition to the basic forty hour work week, he has averaged twenty to thirty hours a month of overtime.

Debtor's original schedule of income and expenses, filed in connection with the case, reflected a monthly take home pay of $2,000.00, against monthly expenses of $1,785.00. It was the disparity between this disclosed net income and the monthly expenses, together with questions concerning the accuracy of the debtor's monthly budget, which apparently prompted the Trustee's § 707(b) inquiry.

On the day before the hearing the debtor filed an amended schedule of current income and expenses. This schedule reduces the debtor's monthly take home pay, after payroll deductions, to slightly more than $1,600.00. Debtor's monthly expenses, however, have doubled. They are now placed at almost $3,400.00.

Rather than paying rent of $260.00 a month, the debtor's rent is now $550.00 a month. He attributes this to the fact that he moved into a larger and much nicer apartment after having filed his bankruptcy petition. Because of the move, utilities have also increased, from $95.00 to $216.00 each month, to approximately $250.00 a month, including $35.00 for cable television. Debtor spends $433.00 each month on food. The monthly budget for clothing is placed at $200.00. Because the debtor has a lot of dry cleaning, his laundry and cleaning budget is approximately $216.00 each month. Sixty-five dollars a month is allocated to newspapers, books, and periodicals. The debtor claims to read at least two major papers daily and three novels a week. (To the debtor's credit this item was originally budgeted at $150.00 a month.) Medical expenses, although originally budgeted at $20.00 a month, are now approximately $67.00 monthly. Two-hundred fifty

dollars each month is spent on transportation, an additional $85.00 a month pays for auto repairs and insurance. The debtor does not, however, have any secured creditors to whom he would be making periodic payments on account of an automobile loan. For recreation, the debtor has budgeted more than $840.00 each month, in order to pay for dining out on a weekly basis, together with various camping and weekend trips to California, Wisconsin, and Chicago. Although religious and charitable contributions are placed at $125.00 each month, in his testimony the debtor could not substantiate more than approximately $40.00 of charitable giving on a regular basis. More than $165.00 a month, or $2,000.00 annually, has been allocated to miscellaneous furniture, appliance, and household repairs. Debtors personal hygiene needs, such as mouthwash, toothpaste, Q-tips, baby powder, hair spray, and brushes require a monthly expense of $86.66. Lastly, the debtor anticipates paying his attorney $43.00 a month, on account of the services rendered in connection with his petition.

Having reviewed the debtor's budget, in light of his testimony at the hearing, the court can only conclude that it is wildly extravagant and excessive. For the purposes of our analysis under § 707(b), in determining whether or not a debtor can afford to repay a significant portion of his obligations, the court is not required to permit the debtor to indulge himself in any lifestyle he would choose, much less one that is obviously far beyond his means. *See In re Krohn, supra,* 78 B.R. at 833, *aff'd,* 7 B.R. at 929; *In re Bryant, supra,* 47 B.R. at 26. Instead, the appropriate standard is one of undue hardship.

> If a debtor has the ability to repay all or a substantial portion of his debts within a reasonable time, while at the same time maintaining a reasonable standard of living, then he cannot be so financially destitute that his immediate welfare is in question. *In re Hudson, supra,* 56 B.R. at 419.

In addition to the debtor's extravagant monthly budget, debtor's disclosed monthly

take home pay is inaccurate. The figure which has been given to the court, in the amended schedule of income and expenses, is not based upon the debtor's historical income, over any particular period of time. It is, instead, an estimate, based upon a hypothetical work week of forty hours and hypothetical payroll deductions determined by the debtor's counsel. Even if we assume that the assumptions which were made in arriving at the estimated take home pay are correct, those assumptions ignore the fact that the debtor has historically averaged 20 to 30 hours a month of overtime, at a substantially increased rate of pay. Furthermore, the debtor anticipates continuing this overtime, at least for the foreseeable future. Given the historical continuity of this additional source of income, the debtor's claim that it may not be available to him in the future is based upon nothing more than speculation and conjecture. Accordingly, the debtor's disclosed monthly income is doubly inaccurate. It is based not upon reality but upon hypothetical estimates. It also fails to include a substantial source of income which has been historically and regularly available. Given the nature of these inaccuracies, not only does the information that the debtor put before the court fail to accurately reflect his true financial condition, but also, he has attempted to mislead the court by withholding highly relevant information.

Where the debtor's motivation for this Chapter 7 proceeding is concerned, it appears that his financial misfortune is not the result of any personal calamity. Instead, it clearly appears that the debtor seeks only to gain relief from his past excesses. Furthermore, given the debtor's profligate propensity to spend, as disclosed by his monthly budget, the court is certain that the debtor must return, in the near future, in order to gain relief from habits he obviously has no desire or inclination to change. *See In re Grant, supra,* 51 B.R. at 396.

Based upon all of the foregoing, the court can only conclude that to grant relief to this debtor would constitute a substantial abuse of Chapter 7. The debtor is not unable to repay his creditors, he is merely unwilling to do so. Given his historical income and a reasonable standard of living, the debtor has the ability to repay all or a significant portion of his obligations through a Chapter 13 plan. Moreover, the debtor has not given the court an accurate picture of his true financial condition and the court believes that, in doing so, he has attempted to mislead us. Debtor seeks only to obtain relief from his past excesses and, given his monthly budget, obviously intends to continue the extravagant lifestyle which has brought him here in the first place. This case must be dismissed and an appropriate order doing so will be entered.