**In the Matter of Phillip B. WOODHALL, Debtor.**

**Bankruptcy No. 89–50932.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Sept. 1, 1989.

Mark W. Roadarmel, Atty.–Advisor, Macon, Ga., for U.S. Trustee.

Ward Stone, Jr., Macon, Ga., for debtor.

## MEMORANDUM OPINION AND ORDER

ROBERT F. HERSHNER, Jr., Chief Judge.

Phillip B. Woodhall, Debtor, filed a petition under Chapter 7 of the Bankruptcy Code on April 13, 1989. Debtor schedules his gross monthly income as $9,600. Debtor schedules priority debts in the amount of $12,212 for unpaid 1988 federal and state income taxes. He schedules unsecured debts without priority totaling $42,-541.97. There are no secured creditors.

On July 12, 1989, the United States Trustee (Trustee) filed a motion to dismiss Debtor's case pursuant to section 707(b) of the Bankruptcy Code. Trustee alleges Debtor is able to fund a Chapter 13 plan and thus a Chapter 7 discharge would be a substantial abuse of the provisions of Chapter 7. A hearing was held on the motion on August 16, 1989.

Debtor is an emergency room physician at HCA Palmyra Park Hospital, Albany, Georgia. Debtor has been employed in a similar capacity at various hospitals for the past thirteen or fourteen years. Debtor testified that he will continue to be able to find employment as an emergency room physician. Debtor testified that emergency room work is very stressful and that he wants to change his medical specialty as soon as his nondischargeable priority debts are paid. Debtor proposes to pay his priority debts in monthly payments of $1200. After paying his priority debts, Debtor plans to train to become a psychiatrist. This will require about three years of additional training in Atlanta, Georgia. Debtor states that he is forty-two years old, and that if he does not make this career change now, he will be too old to be accepted into this training. Debtor would receive a stipend of about $30,000 per year during his training.

Many of Debtor's financial problems are related to marital problems which resulted in divorce in June 1988. Debtor's unsecured debts are primarily consumer debts.

■ Trustee urges the Court to dismiss Debtor's case pursuant to the substantial abuse provision of section 707(b) of the Bankruptcy Code.[1] That section provides:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C.A. § 707(b) (West Supp.1989). The Court must make two findings before it can grant Trustee's motion. First, the Court must find that Debtor's debts are primarily consumer debts. Secondly, the relief sought under Chapter 7 must be a substantial abuse of the bankruptcy process. There is a presumption in favor of granting relief. Therefore, Trustee bears the burden of showing substantial abuse.

In this case, Debtor testified that his debts are primarily consumer debts. The remaining question is whether the granting of relief would be substantial abuse. Substantial abuse is not defined in the Bankruptcy Code.

Turning to the specific legislative history dealing with the 1984 enactment of section 707(b), all commentators agree that there is no normal legislative history dealing with the critical language at issue. *In re Keniston,* 85 B.R. 202, 217 (Bankr.D.N.H.1988). Some courts have relied upon an early Senate draft to determine Congress' intent in enacting section 707(b). *See In re Walton,* 866 F.2d 981, 983 (8th Cir.1989). In this Court's view, the authoritative source for finding congressional intent lies in the committee reports on the bill. *See Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984). The Court prefers, therefore, to consider the holdings of other courts rather than to rely upon a draft of proposed legislation.

Virtually every court has concluded that the single most important indicator of substantial abuse is the presence of enough disposable income to realistically enable the debtor to repay a significant portion of his debts through a Chapter 13 plan. *See Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 914–15 (9th Cir.1988) (A debtor's ability to pay his debts when they come due, as determined by his ability to fund a Chapter 13 plan, is the primary factor to be considered. A finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse.). *See also In re Rushing,* 93 B.R. 750, 752 (Bankr.N.D.Fla.

1. 11 U.S.C.A. § 707(b) (West Supp.1989).

1988); *In re Strong,* 84 B.R. 541, 545 (Bankr.N.D.Ind.1988); *In re Gaukler,* 63 B.R. 224, 225 (Bankr.D.N.D.1986); *In re Kress,* 57 B.R. 874, 878 (Bankr.D.N.D. 1985); *In re Hudson,* 56 B.R. 415, 419 (Bankr.N.D.Ohio 1985); *In re Grant,* 51 B.R. 385, 394 (Bankr.N.D.Ohio 1985); *In re Edwards,* 50 Bankr. 933, 937–38 (Bankr.S. D.N.Y.1985).

Some courts attach such great significance to this factor that it becomes the only one considered. *See In re Struggs,* 71 B.R. 96, 97 (Bankr.E.D.Mich.1987) (If a debtor can repay a meaningful part of his unsecured debt in a Chapter 13 plan, his Chapter 7 petition should be dismissed.).

This Court will stop short, however, of adopting the position that the ability to repay debts through a Chapter 13 plan is the only determining factor. Substantial abuse should be determined on a case-by-case basis after considering the totality of the circumstances.[2] *In re Ploegert,* 93 B.R. 641, 642 (Bankr.N.D.Ind.1988); *In re Kress,* 57 B.R. 874, 878 (Bankr.D.N.D. 1985).

Debtor argues that the purpose behind a Chapter 7 discharge is to give an honest debtor a fresh start. This point was well put by the United States Supreme Court in *Local Loan Co. v. Hunt.*[3]

The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much as, if not more than, it is a property right. * * * The new opportunity in life and the clear field for future effort, which it is the purpose of the Bankruptcy Act to afford the emancipated debtor, would be of little value to the wage earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy.

292 U.S. 234, 245, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Debtor testified that unless he begins his study of psychiatry in the very near future, he will be too old to be considered for training in that specialty. The Court has taken Debtor's good faith and unique hardship into consideration under section 707(b). *See In re Walton,* 866 F.2d at 983.

■ In this case, Debtor has sufficient income to repay one hundred percent of both his priority and unsecured debts within four years under a Chapter 13 plan. Debtor is a professional person with a proven earning history. It is likely that he will continue to earn a high income. The Court is not persuaded, in this case, that Debtor's desire to change his area of medical specialty is a sufficient reason to grant him a Chapter 7 discharge. The intention of doing something in the future is too indefinite for the Court to overlook Debtor's proven ability to earn a high income.

The Court concludes that affording Debtor relief under Chapter 7 would be a substantial abuse of Chapter 7.

Accordingly; it is

---

**2.** In *In re Strong,* the court noted that these factors should include, but not be limited to, the following:

(1) Was the bankruptcy petition filed due to sudden illness, calamity, disability, or unemployment?

(2) Did debtor incur cash advances and make consumer purchases far in excess of the ability to repay?

(3) Is debtor's proposed family budget excessive or unreasonable?

(4) Do debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition?

(5) Was the petition filed in good faith?

84 B.R. 541, 545 (Bankr.N.D.Ind.1988).

In *In re Kress,* the court noted these criteria:

1. Whether the debtors have a likelihood of sufficient future income to fund a Chapter 13 Plan which would pay a substantial portion of the unsecured claims;

2. Whether the debtors petition was filed as a consequence of illness, disability, unemployment or some other calamity;

3. Whether the schedules suggest the debtors incurred cash advancements and consumer purchases in excess of their ability to repay them;

4. Whether the debtors proposed family budget is excessive or extravagant;

5. Whether the debtors Statement of Income and Expenses is misrepresentative of their true financial condition.

57 B.R. 874, 878 (Bankr.D.N.D.1985).

**3.** 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

ORDERED that the motion to dismiss the Chapter 7 case of Phillip B. Woodhall, Debtor, filed by the United States Trustee on July 12, 1989 hereby is granted; and it is further

ORDERED that the Chapter 7 case of Phillip B. Woodhall, Debtor, hereby is dismissed pursuant to section 707(b) of the Bankruptcy Code, but the effective date of dismissal is stayed until the 12th day of September, 1989, to allow Debtor ten days to convert his Chapter 7 case to a case under Chapter 13 of the Bankruptcy Code.

SO ORDERED.