### In re Gregg Neil JOHNSON and Sheryl Lynn Johnson, Debtors.

### Bankruptcy No. BK 89–50767.

United States Bankruptcy Court, S.D. Illinois.

June 14, 1990.

    Gregg Neil Johnson and Sheryl Lynn Johnson, pro se.

James Yobski, Peoria, Ill., Asst. U.S. Trustee.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

Gregg and Sheryl Johnson ("debtors") filed a petition under Chapter 7 of the

Bankruptcy Code on December 12, 1989. Debtors listed property taxes owing for 1988 in the amount of $1100.00, secured debts totaling $40,500.00 and unsecured debts totaling $36,759.19. The secured debts consist of $34,000.00 owed on debtors' residence pursuant to a Contract for Deed, and $6500.00 owed on a 1986 Ford Taurus. Debtors' Statement of Intention indicates that debtors intend to reaffirm the debt owed on their home and to surrender the 1986 Ford Taurus. Debtors' unsecured debts include $16,050.00 owed on student loans. The Schedule of Current Income and Expenditures filed by debtors showed a total monthly income of $3630.00 and monthly expenses of $2030.00.

The United States Trustee ("U.S. Trustee") filed a motion to dismiss under 11 U.S.C. § 707(b), contending that debtors had a monthly disposable income of $1600.00 and therefore had the ability to repay their debts. Debtors then filed amended schedules indicating, among other things, that 1) debtors had purchased a 1984 Ford Escort for $800.00, thus increasing their secured debt by $800.00; 2) Sheryl Johnson's monthly take home pay had decreased from $1138.79 to $602.00 due to a voluntary change in employment; and 3) debtors' total monthly income had decreased from $3630.00 to $3094.00, while debtors' expenses had increased from $2030.00 to $3016.67. The added expenses included an increase in food expenses from $450.00 to $930.00 per month, $230.00 per month for cigarettes, and $160.00 per month for household supplies.

At the hearing on the U.S. Trustee's motion to dismiss, Gregg Johnson testified that since the filing of the petition and amended schedules, he received a $6,000.00 raise, thereby increasing his annual salary from $30,000.00 to $36,000.00, and his monthly take home pay from $1992.00 to approximately $2200.00.[1] If Mr. Johnson's increase is taken into consideration, debt-

ors' total monthly income is $3302.00, while monthly expenses are, as stated, $3094.00.[2]

The U.S. Trustee contends that despite the added expenses shown in the amended schedules and regardless of whether Mr. Johnson's raise is considered, the debtors can afford to repay their debts through a Chapter 13 plan. Therefore, according to the U.S. Trustee, the filing of a Chapter 7 petition constitutes "substantial abuse" under 11 U.S.C. § 707(b), and the petition should be dismissed.

Section 707(b) provides as follows:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtors.

11 U.S.C. § 707(b).

A. *Consumer Debts*

Under the plain language of the statute, the Court must first determine whether the Johnsons' debts are "primarily consumer debts." The Code defines consumer debt as "debt incurred by an individual primarily for a personal, family, or household purpose...." 11 U.S.C. § 101(7)." A literal reading of the Code's simple language leads inexorably to the conclusion that consumer debt includes secured debt." *In re Kelly*, 841 F.2d 908, 912 (9th Cir.1988). The more controversial issue is whether debts secured by real property constitute consumer debts.

The legislative history indicates that debts secured by real property were not intended to be classified as consumer debts. *See* 4 *Collier on Bankruptcy*, ¶ 707.06 at 707–17 (15th ed. 1990). Thus, some courts have adopted the position that

---

1. Debtor did not specify what his monthly take home pay is with the new raise. The Court's estimate of $2200.00 is based on a monthly gross salary of $3,000.00.

2. Debtors' monthly income includes $500.00 per month that Sheryl Johnson receives in child support.

home mortgages are not consumer debts. *See, e.g., In re Ikeda,* 37 B.R. 193, 194–95 (Bankr.D.Haw.1984); *In re Nenninger,* 32 B.R. 624, 626 (Bankr.W.D.Wis.1983); *In re Randolph,* 28 B.R. 811, 813 (Bankr.E.D.Va. 1983). Other courts have refused to follow the legislative history in light of the clear and unambiguous definition of consumer debt found in section 101(7). *See, e.g., Matter of Booth,* 858 F.2d 1051, 1054–55 (5th Cir.1988); *In re Kelly,* 841 F.2d at 912; *In re Walton,* 69 B.R. 150, 153–54 n. 4 (E.D. Mo.1986), *aff'd,* 866 F.2d 981 (8th Cir.1989); *In re Wegner,* 91 B.R. 854, 857 (Bankr.D. Minn.1988). "This approach recognizes that the legislative history is not part of the statute and that if Congress intended to exclude home mortgages it could have said so in the definition of consumer debt." 4 *Collier on Bankruptcy,* ¶ 707.06 at 707–18.

It is this Court's position that home mortgages constitute consumer debts. "It is difficult to conceive of any expenditure that serves a 'family ... or household purpose' more directly than does the purchase of a home...." *In re Kelly,* 841 F.2d at 913.[3] Indeed, section 524(d) of the Bankruptcy Code, dealing with reaffirmation of debts, assumes that home mortgages may be consumer debts.[4] "The statutory scheme so clearly contemplates that consumer debt include debt secured by real property that there is no room left for any other conclusion." *Id.* at 912.

■ In the present case, debtors owe $34,000.00 on their home pursuant to a Contract for Deed. Although no home mortgage as such is involved, the cases holding that home mortgages are consumer debts are clearly applicable. The debt is secured by the debtors' residence, it was incurred for a "family or household purpose," and it is, therefore, a consumer debt.

■ The remaining question is whether debtors have *primarily* consumer debts. Some courts have held that when more than half of the dollar amount owed is consumer debt, the statutory requirement is satisfied. *Id.* at 913; *In re Bell,* 65 B.R. 575, 577–78 (Bankr.E.D.Mich.1986). Other courts have held that the *number* of consumer debts must be considered in addition to the dollar amount. *Matter of Booth,* 858 F.2d at 1055. This Court agrees with the latter approach and holds that the question of whether debtors have primarily consumer debts should be evaluated in terms of both the dollar amount and number of consumer debts.

■ In the present case, of the debtors' total $79,159.19 indebtedness, at least $40,-309.19—more than half—is consumer debt. That amount includes $34,000.00 owed on their home, $800.00 owed on the 1984 Ford Escort, and $5509.19 owed on credit card and health care accounts. Additionally, more than half of the number of listed debts are consumer debts. Accordingly, debtors have "primarily consumer debts" within the meaning of section 707(b).

B. *Substantial Abuse*

■ Under section 707(b), the Court must also find that granting debtor relief would be a "substantial abuse" of Chapter 7. Although the term "substantial abuse" is not defined in the Bankruptcy Code, the courts have generally concluded that section 707(b) was intended to deny relief to the dishonest or non-needy debtor. *See e.g., In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989); *In re Walton,* 866 F.2d at 983; *In re Martin,* 107 B.R. 247, 248 (Bankr.D.

3. Loans secured by a debtor's residence may not always be classified as consumer debt. If the loan is used for some purpose other than to pay off the mortgage on a residence, the debt may or may not be a consumer debt. *See In re Booth,* 858 F.2d at 1055.

4. Section 524(d) provides in part as follows: If a discharge has been granted and if the debtor desires to make [a reaffirmation] agreement ... then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall ... determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, if the consideration for such agreement is based in whole or in part on a *consumer debt that is not secured by real property of the debtor.*

11 U.S.C. § 524(d)(2) (emphasis added).

Alaska 1989). The courts differ, however, with respect to the question of what specific factors should be considered in determining whether substantial abuse exists.

The Sixth, Eighth and Ninth Circuits have held that the primary, if not exclusive, factor to consider in resolving the substantial abuse issue is whether debtor is able to repay his debts from future income. *See In re Krohn*, 886 F.2d at 126 (if debtor has ability to repay debts out of future earnings, dismissal may be warranted); *In re Walton*, 866 F.2d at 983–85 (primary focus of court is on debtor's projected income and expenses as indicated on the schedules and the availability of future income to pay off prepetition debts); *In re Kelly*, 841 F.2d at 915 (a finding that debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse). A number of lower courts hold that while a debtor's ability to repay debts is a major consideration in the substantial abuse inquiry, other factors must be considered as well. *See Waites v. Braley*, 110 B.R. 211, 214–15 (E.D.Va.1990); *Matter of Woodhall*, 104 B.R. 544, 546 (Bankr.M.D.Ga.1989); *In re Busbin*, 95 B.R. 240, 243–46 (Bankr.N.D. Ga.1989); *Matter of Ploegert*, 93 B.R. 641, 642 (Bankr.N.D.Ind.1988). These factors include (1) whether the bankruptcy petition was filed due to a sudden illness or unforeseen calamity; (2) whether debtor incurred cash advances and made consumer purchases far in excess of the ability to repay; (3) whether debtor has fully and accurately disclosed his monthly income and whether debtor's budget is excessive or extravagant; and (4) whether the information supplied on debtor's schedules and statements accurately reflects the debtor's true financial condition. *Matter of Ploegert*, 93 B.R. at 642; *Matter of Woodhall*, 104 B.R. at 546 n. 2 (citations omitted). Other courts hold that while "ability to pay" should be considered in determining the existence of substantial abuse, this factor should not be accorded greater weight than other relevant considerations. *See In re Martin*, 107 B.R. at 248–49 (court has discretion to deny

motion to dismiss even if debtor is able to repay debts, where mitigating factors indicate that debtor is entitled to benefit of "fresh start"); *Matter of Tefertiller*, 104 B.R. 513, 516 (Bankr.W.D.Ga.1989); *In re Wegner*, 91 B.R. at 858 (court should consider "totality of circumstances").

The legislative history of section 707(b) indicates that there was "vehement opposition" to the inclusion of an "ability to pay" or "future income" test in the statute. *See In re Walton*, 866 F.2d at 983 n. 4 and 985–87 (McMillian, J., dissenting). Apparently, in response to this opposition, Congress declined to include any such test, and instead used the undefined term "substantial abuse." However, the committee report on an early draft of the statute[5] states that section 707(b) "upholds creditors' interests in obtaining repayment where such repayment would not be a burden" on the debtor. S.Rep. No. 65, 98th Cong., 1st Sess. 53 (1983). The report further states that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." *Id.* at 54. "This language seems to anticipate that a court, in considering 'substantial abuse' under section 707(b), will look to a debtor's ability to repay his creditors out of his future income." *In re Walton*, 866 F.2d at 983.

After considering the relevant legislative history and in light of developing case law, this Court finds that a debtor's ability to pay his debts out of future income is the primary, though not exclusive factor, to consider in determining whether substantial abuse exists under section 707(b). As stated by the Eighth Circuit, "in deleting the mandatory future income threshold formula, Congress simply replaced a rigid test with a flexible 'substantial abuse' standard that does not foreclose the courts from considering, *inter alia*, the debtor's ability to pay his debts out of his future income." *Id.* (citing *In re Kelly*, 841 F.2d at 914). Indeed, the Court would find it difficult, if not impossible, to resolve the substantial

---

**5.** There were no committee reports on the final version. "Therefore, the report on an earlier draft, S. 445, although far from conclusive, 'is the best available evidence of Congress's intent in enacting section 707(b).'" *In re Walton*, 866 F.2d at 983 (citations omitted).

abuse question without first considering debtor's expenses and projected income, and the availability of future income to repay those debts listed in the schedules.[6] A debtor's ability to repay debts, however, will not automatically result in a section 707(b) dismissal if other factors, such as those previously noted, indicate that dismissal is not warranted. While the "ability to pay" test will be the Court's central focus, the question of whether substantial abuse exists must ultimately be determined on a case-by-case basis.

 The question of whether a debtor has the ability to repay his debts is generally resolved in terms of whether debtor can fund a Chapter 13 plan. *See e.g., In re Walton*, 866 F.2d at 985; *In re Kelly*, 841 F.2d at 914; *Matter of Woodhall*, 104 B.R. at 546. In the present case, debtors have monthly expenses of $3,016.67 and with Mr. Johnson's salary increase, a monthly income of approximately $3302.00. Debtors therefore have $285.33 per month in disposable income. Additionally, a review of debtors' schedules indicates that certain expenses could be reduced, thus providing additional disposable income. Debtors amended their Schedule of Current Income and Expenditures to show an increase in food expenses from $450.00 per month to $930.00. This figure does not include a monthly expense of $160.00 per month for household supplies, nor does it include $230.00 per month for tobacco—those are listed as separate expenses. Although debtors have three children, the Court finds these expenses excessive, even for a family of five, and believes that those expenses could be reduced to provide, *at a minimum*, an extra $100.00 per month in disposable income. This leaves, in round figures, a total monthly disposable income of $400.00. Debtors' unsecured debts, excluding $16,000.00 owed on student loans,[7] total $20,000.00. Based on these figures, debtors could repay $14,400.00 to their unsecured creditors under a three-year

plan, and could pay nearly 100 percent of their unsecured debts under a four-year plan.

Debtors clearly have the ability to repay their debts under Chapter 13. Furthermore, there are no mitigating factors indicating that debtors are otherwise entitled to Chapter 7 relief. The facts, therefore, sufficiently rebut the statutory presumption in section 707(b) that favors granting the relief requested by debtors.

Accordingly, the U.S. Trustee's Motion to Dismiss is GRANTED. IT IS ORDERED that this case is DISMISSED.

---

**6.** The Court notes, however, that inability to pay will not necessarily "shield a debtor from section 707(b) dismissal where bad faith is otherwise shown." *In re Kelly*, 841 F.2d at 915.

**7.** Debtors have already factored into their expenses a $156.00 monthly payment on their student loans.