**In re John Thomas FARRELL, Debtor.**

**Bankruptcy No. 92–22287.**

United States Bankruptcy Court, D. New Jersey.

Nov. 17, 1992.

Office of U.S. Trustee, Newark, NJ, Robert Schneider, Staff Atty. for the U.S. Trustee.

Robert L. Doris, Jr., South Orange, NJ, for debtor.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

The United States trustee brought this motion to dismiss the debtor's chapter 7 petition pursuant to § 707(b) of the Bankruptcy Code. The issues raised in this contested hearing are core proceedings as defined by Congress in 28 U.S.C. § 157 *et seq.* The within opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FINDINGS OF FACT

1. On March 19, 1992, the debtor, John T. Farrell ("debtor"), filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code.

2. Debtor is single, works as a letter carrier for the United States Postal Service, and resides at a group home for individuals recovering from substance abuse.

3. On the original bankruptcy petition, debtor listed his gross monthly wages as $3,583, with payroll deductions of $1,133, leaving a net pay of $2,450. [Schedule I] According to the petition, debtor's monthly expenses totalled $1,632, leaving a monthly surplus of $818. [Schedule J]

4. Debtor also listed 15 unsecured claims totalling $31,247 on his bankruptcy petition. At least ten (10) of these claims were incurred in 1991. [Schedule F]

5. Debtor claimed all of his personal property, $17,820 in value, as exempt.[1] [Schedules A–C]

6. On June 29, 1992, the United States trustee, pursuant to 11 U.S.C. § 707(b), filed this motion to dismiss debtor's chapter 7 bankruptcy proceeding. The trustee based his motion primarily on debtor's schedules which showed a $818 per month surplus after expenses.

7. On July 13, 1992, debtor filed a certification in opposition to the trustee's motion to dismiss. Debtor claimed in this certification that the information regarding his monthly gross and net wages shown on his bankruptcy petition was erroneous. Instead of $3,583, debtor attested that his true monthly gross wages are $2,450, yielding net take-home pay of $1,933. Debtor added that his income varies due to fluctua-

---

1. The bulk of his personal assets, $16,820, is a pension plan with the U.S. Postal Service.

tions in the amount of overtime hours worked.

8. Debtor also stated in his certification that his Schedule J Expenses required revision. Debtor explained that his monthly recreation expenses are $150, not $480; the $75 listed for hair care is an annual, not a monthly, expense; and his food expense is $530, not $300, because he lives in a group home and must eat out.

9. Finally, debtor asserted in his certification that he incurred his consumer debts prior to May, 1991, and had intended to repay them. However, his substance abuse problem, which generated $7,700 of the debt, resulted in the loss of income from October 16 to November 20, 1991. When difficulties arose, debtor stated that he contacted his Employee Assistance Program and the New Jersey Credit Counseling Service, both of whom suggested that he consider filing for bankruptcy.

10. On August 19, 1992, Dr. John Callan ("Callan"), a licensed psychotherapist, filed a certification in opposition to the United States trustee's motion to dismiss. Debtor was referred to Callan by the Employee Assistance Program of the U.S. Post Office. Callan who has been treating debtor for his substance abuse problems since late 1991, stated that debtor has made an earnest effort to control his dependency on addictive substances and does not have an exorbitant lifestyle. Callan cautioned, however, that if debtor does not receive a discharge of his debts, he may suffer a relapse.

11. On August 19, 1992, Carin Zipser ("Zipser"), a credit counsellor at Consumer Credit Counseling Services in East Orange, also filed a certification in opposition to the United States trustee's motion to dismiss. Zipser attested that she had met with debtor on February 18, 1992 to consider whether he was an appropriate candidate for a debt management program. After analyzing debtor's financial situation, Zipser concluded that debtor was not an appropriate candidate. Zipser then recommended that debtor seek legal advice regarding bankruptcy.

12. On August 31, 1992, the court conducted a hearing to determine cause for the United States trustee's motion to dismiss and reserved decision on the matter.

## DISCUSSION

Section 707(b) of the bankruptcy code sets out the requirements for dismissal of a chapter 7 petition in this case:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b). Thus, in order to prevail in the case at bar, the United States trustee must show that debtor's debts are primarily consumer and that granting a discharge would be a "substantial abuse" of the Bankruptcy Code. Most importantly, however, the United States trustee bears the burden of overcoming the strong presumption in favor of granting the discharge requested by debtor. *See In re Woodhall*, 104 B.R. 544, 545 (Bankr. M.D.Ga.1989).

First of all, it is quite clear from the record and the bankruptcy schedules that debtor's debts are primarily consumer. "Consumer debt" is "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(7). A debtor has "primarily" consumer debt when more than half of the dollar amount owed is consumer debt. *See Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 913 (9th Cir. 1988). Of the 15 unsecured debts listed, 12 are either for charge accounts, personal loans or medical expenses. Moreover, debtor does not contest the United States trustee's assertion that his debts are primarily consumer. Accordingly, debtor's bankruptcy petition meets the first requirement for dismissal under § 707(b).

Having satisfied the first requirement, the next step is to determine whether a grant of discharge would constitute "substantial abuse" of the bankruptcy provisions. "Substantial abuse" is not defined by the Bankruptcy Code or any of the legislative history accompanying its enactment. *See In re Dubberke*, 119 B.R. 677, 678 (Bankr.S.D.Iowa 1990). Consequently, since its enactment, § 707(b) has been the subject of widely diverging judicial interpretations. *Id.* While no definitive position has been taken by the Third Circuit, courts have generally adopted one of two views concerning the proper definition of "substantial abuse."

One view taken by some courts is to find substantial abuse under § 707(b) in any case where it is established the debtor has the ability to pay a significant portion of his or her debts. *Dubberke*, 119 B.R. at 678. Courts utilizing this standard for § 707(b) dismissal place practically all reliance on a debtor's "ability to repay" and rarely consider any other factors surrounding the debtor's bankruptcy filing. *See In re Kelly*, 841 F.2d at 914–15. Other courts dealing with the "substantial abuse" definition have rejected the single "ability to repay" approach in favor of a more balanced framework which takes into account other factors precipitating and surrounding the debtor's filing of a petition. *See Dubberke*, 119 B.R. at 678–679.

With respect to emphasizing simply an "ability to repay," this court is troubled by such a tunnel vision approach to § 707(b) dismissal motions. At the outset, it is important to stress that the Bankruptcy Code does not even require a debtor to be insolvent in order to file for bankruptcy. *See Green v. Staples (In re Green)*, 934

F.2d 568, 572 (4th Cir.1991). Section 109 of the Bankruptcy Code expressly allows any person to be a debtor under chapter 7 so long as they do not fall within one of the listed exceptions. *Id.* Quite importantly, none of the exceptions to § 109 are predicated on future income of the debtor. *Id.* Additionally, § 706(c) of the bankruptcy code expressly prohibits a chapter 7 debtor from being forced to convert to a chapter 13.[2] 11 U.S.C. § 706(c). In enacting this provision, Congress' primary concern was to ensure that a debtor, whose wages are not exempt from the bankruptcy estate by virtue of § 1322(a)(1), would not be compelled to toil for the benefit of creditors in violation of the Thirteenth Amendment's involuntary servitude prohibition. *See Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 2202, 115 L.Ed.2d 145 (1991). Accordingly, and in light of the purposes behind the bankruptcy sections outlined above, it would be clearly improper to base a § 707(b) motion to dismiss solely on the basis of a debtor's perceived ability to repay his or her debts or fund a chapter 13 plan.[3]

In the words of the United States Supreme Court:

> One of the primary purposes of the Bankruptcy Act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes."

> \*     \*     \*     \*     \*     \*

> From the viewpoint of the wage-earner there is little difference between not earning at all and earning wholly for a

---

**2.** The court notes that many of the cases following the "ability to repay" standard equate an ability to repay with an ability to fund a chapter 13 plan.

**3.** Even with regard to the strict "ability to repay" standard, this court is satisfied that the United States trustee's motion should be denied. The United States trustee's principal argument concerning debtor's ability to repay relies upon the financial picture set forth in the original bankruptcy petition. However, the United States trustee has failed to address, in its brief

or at oral argument, debtor's certification which revised the budget numbers in the original schedules. According to the revised numbers, while the exact amount of debtor's monthly surplus will vary from month to month depending on overtime, any amount will be significantly less than the $818 originally contemplated. The fact that debtor may ultimately have a few hundred dollars per month in surplus funds does not support the argument that Farrell can successfully and adequately fund a chapter 13 plan to repay all or substantially all of his debts.

creditor. Pauperism may be the necessary result of either ... The new opportunity in life and the clear field for future effort, which it is the purpose of the Bankruptcy Act to afford the emancipated debtor, would be of little value to the wage-earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy.

*Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citation omitted).

` ■ In contrast to sole reliance on a debtor's ability to repay his or her debts, at least one court has suggested that the following criteria should be considered when determining whether substantial abuse exists in a particular case:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*In re Green,* 934 F.2d at 572. The court in *Green* offered perhaps the best explanation for using the variety of factors listed above, as opposed to focusing exclusively on the debtor's ability to repay:

Exploring these factors, as well as the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors. The debtor's relative solvency may raise an inference that such a situation exists. Nevertheless, in light of the statutory presumption that a debtor's Chapter 7 petition should be granted, solvency alone is not a sufficient basis for a finding that the debtor has in fact substantially abused the provisions of Chapter 7.

*Id.* This court agrees with the approach taken by the fourth circuit and hereby adopts that approach. Application of all of the above factors, including consideration of the debtor's ability to repay, is the best approach to determine whether a chapter 7 debtor is truly abusing the bankruptcy process.

■ When viewing the case at bar in light of the additional factors enumerated above, debtor's case for non-dismissal proves compelling. Application of the *Green* factors to the within case suggests that debtor's situation is not abusive. The expenses generated by his substance abuse problem and treatment precipitated the necessity to file. Although his debt includes credit card purchases, the purchases do not appear excessive. While monthly food expenses appear high, the debtor did explain that evening counseling sessions preclude him from eating dinner at home.[4] The debtor's revised statement of current income is somewhat unclear. Nevertheless, even the figure provided by the debtor in his certification appears to be an overstatement and does not readily indicate an ability to repay.[5] Finally, the facts provide evidence of a good-faith filing. The debtor's good faith is indicated by the upward revision of his food expenses, despite the risk of it being labelled excessive, and the failure to employ the catch-all miscellaneous category to "hide" expenses. Moreover, debtor's credit counselor, Carin Zipser, recommended he seek counsel for bankruptcy protection more than a month before he actually filed. Therefore, an analysis of all the debtor's circumstances,

---

**4.** The court accepts Dr. Callan's attestation that Farrell faithfully attends these evening counseling sessions.

**5.** Farrell's supplied 1991 Wage Statement indicates a salary of $29,496.42—significantly lower than that shown on the original petition schedules.

in light of the statutory presumption in favor of granting the relief requested by the debtor, confirms that debtor's petition does not substantially abuse chapter 7. Based on all the evidence, this court is quite convinced that debtor was and is not seeking an advantage over his creditors and under the circumstances debtor merits a fresh start, which chapter 7 will provide.

## CONCLUSION

Accordingly, the United States trustee's motion to dismiss the chapter 7 petition of the debtor, is hereby denied.